UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

HEATHER ROLL; COLLEEN
RONAN; and DAVID K. RONAN;
individually and on behalf of all others
similarly situated,
                Plaintiffs,

vs.                       Case No.: 6:20-cv-212-Orl-37EJK

ENHANCED RECOVERY
COMPANY, LLC d/b/a
ENHANCED RESOURCE CENTERS,
                Defendant,

_____/

## RENEWED JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Pursuant to Fed.R.Civ.P. 23, the Parties respectfully file this Renewed Joint Motion seeking Preliminary Approval of their Class Action Settlement.

The Court denied without prejudice the Parties' Original Joint Motion for Preliminary Approval by Order dated July 8, 2021. (Doc. 62). In that Order the Court noted that the "the parties failed to provide any briefing on standing or the Rule 23(a) or (b)(3) factors. Thus, the undersigned cannot make a recommendation as to whether a class should be certified for the purposes of approving the settlement agreement." This Motion addresses both standing and the Rule 23(a) and (b)(3) factors at the onset of this Motion. Next, the Parties address the required Rule 23(e) factors for class action settlements.

The Parties' settlement in this case tracks similar COBRA class action

1

settlements approved by Middle District of Florida, including most recently in *Holmes v. WCA Mgmt. Co., L.P.*, 20-cv-00698-ORL-40LRH (M.D. Fla. June 29, 20210 (Doc. 51), *Silberstein v. Petsmart, Inc.*, 8:19-cv-02800-SCB-AAS (M.D. Fla. December 4, 2020) (Doc. 38), *Valdivieso v. Cushman & Wakefield, Inc.*, M.D. Fla. Case No.: 8:17-cv-00118-SDM-JSS (M.D. Fla. Dec. 7, 2018) (Doc. 92), *Hicks v. Lockheed Martin Corp, Inc.*, 8:19-cv-00261-JSM-TGW (M.D. Fla. Sept. 5, 2018) (Doc. 34), *Carnegie v. FirstFleet Inc.*, M.D. Fla. Case No.: 8:18-cv-01070-WFJ-CPT (M.D. Fla. June 21, 2019), (Doc. 63), and *Vazquez v. Marriott Int'l, Inc.*, M.D. Fla. Case No. 8:17-cv-00116-MSS-MAP (Feb. 27, 2020, Doc. 127). Orders from those cases are attached as **Composite Exhibit A**. In fact, the per-class member recovery in this case of $1,305.00 is higher than in each of the above-cited cases.

Based on these cases, and pursuant to Fed. R. Civ. P. 23(a), Rule 23(b)(3), and Rule 23(e), the Parties respectfully ask that this Honorable Court enter an Order: (1) certifying the class for purposes of the Parties' Settlement Agreement; (2) appointing Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel; (3) preliminarily approving the Settlement Agreement between the Parties and the class; (4) approving the form and manner of notice to the class; and, finally, (5) scheduling a fairness hearing for the final consideration and approval of the Parties' settlement. The Parties' stipulation of class certification is attached hereto as **Exhibit B**. A proposed Order granting this Motion is attached as **Exhibit C**. In further support of this Joint Motion the Parties state as follows:

## I.    <u>BACKGROUND.</u>

A.    **Procedural History**.

The crux of this lawsuit is simple: Defendant allegedly failed to provide Plaintiffs and the class members with timely notice of their right to elect continuation health coverage under COBRA.  The Eleventh Circuit has long held that under COBRA, "[n]otice is of enormous importance. The COBRA notification requirement exists because employees are not expected to know instinctively of their right to continue their healthcare coverage." *Cummings v. Wash. Mut.*, 650 F.3d 1386, 1391 (11th Cir. 2011).  As a result of Defendant's alleged violation of Plaintiffs' rights under ERISA/COBRA, Plaintiffs lost their health insurance and suffered informational harm.  Either injury suffered by Plaintiffs, and certainly both collectively, sufficiently confer standing.

Named Plaintiffs Colleen Ronan and Heather Roll were employed by Defendant at its Melbourne, Florida facility.  Their employment was terminated as part of a reduction in force by Defendant.  As a result, their health plan benefits through Defendant were terminated effective November 30, 2019.  Similarly, Named Plaintiff David Ronan (husband to Plaintiff Colleen Ronan), was a qualified beneficiary under Defendant's health plan.  All three Named Plaintiffs, thus, each experienced a qualifying event (termination of employment), triggering Defendant's obligation to provide them each with a timely and compliant notice of their rights to elect continuation coverage under COBRA.  Defendant allegedly failed to do so.  As a result, on February 7, 2020, Plaintiffs filed this putative class action lawsuit alleging violation of the Employee Retirement Income Security Act

3

of 1974 ("ERISA"), as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), 29 U.S.C. § 1166 and 29 C.F.R. § 2590.606, seeking statutory penalties pursuant to 29 U.S.C. § 1132.  There are approximately 50 persons in the putative class.

**B.**    **Facts from the Complaint Establishing Article III Standing.**

First, in terms of standing, the Complaint makes clear that Plaintiffs and the putative class members each suffered a tangible injury in the form of loss of insurance coverage "due to" Defendant's failure to provide them with a timely COBRA notice. (Complaint, Doc. 3, ¶ 24).  The loss of insurance to Plaintiffs is a tangible loss of a valuable benefit. (Complaint, Doc. 3, ¶ 24).  Besides a paycheck, health insurance is one of the most valuable things employees get in exchange for working for any employer. (Complaint, Doc. 3, ¶ 24).  Simply put, insurance coverage has a monetary value, the loss of which is a tangible and economic injury clearly giving rise to Article III standing. (Complaint, Doc. 3, ¶ 24).  This is especially true when a qualified beneficiary is unable to obtain continuation coverage and instead must resort to more expensive and less preferable coverage, or moving forward with no coverage at all. (Complaint, Doc. 3, ¶ 24).  Such allegations confer Article III standing.  (Complaint, Doc. 3, ¶ 24).

Additionally, Plaintiffs suffered a concrete informational injury because Defendant failed to provide them with information to which they were entitled to by statute, namely an ERISA-compliant COBRA notice.  (Complaint, Doc. 3, ¶ 22).  Through ERISA, Congress has created a new right—the right to receive the

required Notice as set out in COBRA—and a new injury—not receiving a proper Notice. The Plaintiffs' "inability to obtain [that] information" is therefore, standing alone, "a sufficient injury in fact to satisfy Article III." *Spokeo*, 136 S. Ct. at 1549. (Complaint, Doc. 3, ¶ 22). By depriving Plaintiffs of this information, Defendant injured Plaintiffs and the putative class members they seek to represent. (Complaint, Doc. 3, ¶ 23) (citing to *Church v. Accretive Health, Inc.*, 2016 U.S. App. LEXIS 12414, *1 (11th Cir. July 6, 2016); *Public Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449 (1989); *Fed. Election Comm'n v. Akins*, 524 U.S. 11 (1998).

## C.    <u>**Additional Case Procedural Information.**</u>

This case was extensively litigated before it was settled. On April 4, 2020, Defendant filed an Answer denying the material allegations in the Complaint. Shortly thereafter, Defendant filed a third-party complaint against United Healthcare Services, Inc. ("UHC"). In the third-party complaint, Defendant alleged that it contracted with UHC for the performance of COBRA administration duties, including providing timely COBRA election notices to qualifying participants and beneficiaries. However, despite receiving timely notice from Defendant of a qualifying event, UHC failed to provide COBRA election notices to the Plaintiffs and putative class members. The notices were eventually mailed (albeit late), causing Plaintiffs sufficient economic and informational harm to confer standing here.

Between April and September 2020, the parties engaged in extensive written discovery regarding Plaintiffs' claims, alleged damages, and Defendant's defenses

to Plaintiffs' claims.  Through discovery, the parties determined that fifty (50) participants and beneficiaries did not receive timely COBRA election notices.

Following their extensive discovery efforts, on October 9, 2020, the Parties participated in a mediation before highly-respected mediator Carlos J. Burruezo, who is well-versed in COBRA class action cases.  After a lengthy mediation the Parties were able to reach a potential class-wide resolution for which they now seek preliminary court approval.

The Parties filed their initial Motion for Preliminary Approval of Class Action Settlement on October 30, 2020. (Doc. 54). The Court denied that Motion, as explained above, but allowed the Parties to re-file their Motion to address the issues raised in the Court's Order, including as to the Rule 23(a) and Rule 23(b)(3), as well as standing.

## II.   <u>STANDING</u>.

The Named Plaintiffs and class members (collectively "Plaintiffs) have Article III standing.  More specifically, Plaintiffs have Article III standing under the Supreme Court's landmark decision in *Spokeo, Inc. v Robins*, 136 S. Ct. 1540, 1547 (2016).[1] Consistent with *Spokeo*, here Plaintiffs have alleged two kinds of harm:  (1) economic harm in the form of lost insurance benefits; and, (2)

---

[1] *TransUnion, LLC v. Ramirez*, No. 20-297, 2021 WL 2599472 (U.S. June 25, 2021) does not represent a change to the requirements for standing in federal court.  Rather, it merely elaborates the standard for Article III standing that stems from *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016). Either way, for purposes of settlement, the Parties respectfully submit Plaintiffs have sufficient standing under both *Spokeo* and *TransUnion*.

informational harm as a result of Defendant's failure to provide a timely COBRA notice.

To establish standing, first, Plaintiffs must have suffered an injury in fact—an invasion of a legally-protected interest which is concrete and particularized. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992) (internal citations and quotations omitted). Second, there must be a causal connection between the injury and the conduct complained of—the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. *Id*. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Id*.

As set forth above, first, in terms of standing, Plaintiffs suffered a tangible injury in the form of loss of insurance coverage due to Defendant's failure to provide them with a timely COBRA notice. (Complaint, Doc. 3, ¶ 24). This easily gives Plaintiffs Article III standing.  (Complaint, Doc. 3, ¶ 24).  The loss of insurance to Plaintiffs is a tangible loss of a valuable benefit. (Complaint, Doc. 3, ¶ 24).  Besides a paycheck, health insurance is one of the most valuable things employees get in exchange for working for any employer. (Complaint, Doc. 3, ¶ 24). Simply put, insurance coverage has a monetary value, the loss of which is a tangible and economic injury clearly giving rise to Article III standing. (Complaint, Doc. 3, ¶ 24).  This is especially true when a qualified beneficiary is unable to obtain continuation coverage and instead must resort to more expensive and less

preferable coverage, or moving forward with no coverage at all. (Complaint, Doc. 3, ¶ 24).

In other COBRA cases, courts determined such allegations sufficiently demonstrated that plaintiffs suffered an injury-in-fact sufficient for standing purposes. For example, in *Delaughter v. ESA Mgmt., LLC*, No. 8:16-CV-3302-MSS-AEP, 2018 WL 7349251 (M.D. Fla. Mar. 20, 2018) this Court held, "Plaintiff contends that the Second Amended Complaint alleges...economic injuries sustained through her temporary loss of insurance coverage and the unpaid medical bills incurred as a result of her cancelled surgery. The Court finds that Plaintiff has met her burden of pleading an injury in fact sufficient to establish standing."

Similarly, in *Bryant v. Wal-Mart Store, Inc.*, No. 16-24818-CIV, 2019 WL 3542827, at *2 (S.D. Fla. Apr. 18, 2019), the district court held, "[a]s previously noted, in her Amended Complaint, Plaintiff has alleged that "[t]he deficient [COBRA] notice at issue caused her, and her young sons, to lose health care coverage...[a]t this stage in the proceedings, the court must accept Plaintiff's allegations as true. Accordingly, the Court denies Defendant's Motion to Dismiss for lack of standing."

More recently, in *Robles v. Lowe's Home Ctrs., LLC*, No. 8:19-CV-2713-T-02AAS, 2020 WL 1027592, at *2 (M.D. Fla. Mar. 3, 2020) the court held that "...[Plaintiffs] allege facts showing they suffered a specific economic injury fairly traceable to Defendant's allegedly deficient COBRA notice. Plaintiffs allege that the

deficient notice caused economic injuries in the form of lost health insurance and unpaid medical bills. This is plainly an injury in fact." *See also, Vazquez v. Marriott Int'l, Inc.*, No. 8:17-CV-116-T-35MAP, 2017 WL 6947455, at *2 (M.D. Fla. Aug. 25, 2017).

Causation is also established by the allegations from the Complaint because the injuries-in-fact suffered by Plaintiffs are traceable to Defendant's failure to timely provide Plaintiffs with notice of their rights under COBRA. Simply put, the Complaint makes clear that "Plaintiffs also suffered a tangible injury in the form of loss of insurance coverage ***due to*** Defendant's failure to provide notice." (Complaint, Doc. 3, ¶ 24). Thus, Plaintiffs specifically alleged that Defendant's failure to timely provide them with a COBRA notice caused them to lose insurance coverage. "...[C]onstrued in the light most favorable to the Plaintiff, these allegations are sufficient to state a plausible claim of injury in fact traceable to the allegedly defective COBRA notice as required to confer standing upon the Plaintiff." *Delaughter*, 2018 WL 7349251, at *2; *see also Bryant*, 2019 WL 3542827, at *3; *Robles*, 2020 WL 1027592, at *2 ("...Plaintiffs allege deficiencies in the COBRA notice prevented them from being able to access COBRA coverage....these are sufficient to allege causation for standing and Rule 12(b)(6) purposes.").

The redressability component needed for standing is also satisfied here because of the statutory damages and equitable relief Plaintiffs are entitled to seek pursuant to 29 U.S.C. § 1132(a)(3)(B)(i). *Uzuegbunam v. Preczewski,* 141 S. Ct.

792, 209 L. Ed. 2d 94 (2021) (U.S. Mar. 8, 2021) (Supreme Court held that plaintiffs seeking nominal damages satisfy redressability component sufficient for standing); *Cuellar–Aguilar v. Deggeller Attractions, Inc.*, 812 F.3d 614, 620–621 (8th Cir. 2015), reh'g denied (Feb. 10, 2016) ("where a federal statute provides for either statutory damages or actual damages, plaintiffs who fail to allege actual damages nonetheless [may] satisfy both the injury in fact and redressability requirements of Article III standing by suing for statutory damages.").

Last on standing, but certainly not least, Plaintiffs suffered a concrete informational injury because Defendant failed to provide Plaintiffs and the putative class members with information to which they were entitled to by statute, namely an ERISA-compliant COBRA notice. (Complaint, Doc. 3, ¶ 22). Through ERISA Congress has created a new right—the right to receive the required Notice as set out in the COBRA provisions of ERISA—and a new injury—not receiving a timely notice. The Plaintiffs' "inability to obtain [that] information" is, therefore, "a sufficient injury in fact to satisfy Article III." *Spokeo*, 136 S. Ct. at 1549. By depriving Plaintiffs of this information, Defendant injured Plaintiffs and the putative class members they seek to represent. (Complaint, Doc. 3, ¶ 23). Causation is established as to the Plaintiffs' informational injury because Plaintiffs' Complaint specifically alleges they lost insurance "due to" Defendant's failure to send provide a timely COBRA notice. (Complaint, Doc. 3, ¶ 24). And redressability is established, once again, by virtue of the relief sought.

In sum, based on the cases cited herein, coupled with the well-pleaded facts from the Complaint, Plaintiffs and the class members unquestionably have standing.

### III.    RULE 23(a).

A court can certify a settlement class where the proposed class and proposed class representative meet the four prerequisites in Federal Rule of Civil Procedure 23(a) – numerosity, commonality, typicality, and adequacy of representation – and one of the three requirements of Federal Rule of Civil Procedure 23(b). *See Vega v. T-Mobile USA, Inc.*, 564 F. 3d 1256, 1265 (11th Cir. 2009). Here, pursuant to Rules 23(a) and 23(b)(3), Plaintiffs seek certification of a defined settlement class:

> All participants and beneficiaries in the Defendant's Health Plan at Defendant's Melbourne, Florida facility who were not sent a timely COBRA notice by Defendant during the applicable statute of limitations period as a result of a qualifying event, as determined by Defendant (referenced herein as the "Settlement Class").

The proposed Settlement Class in this case meets the Rule 23(a) prerequisites of numerosity, commonality, typicality, and adequacy of representation, as detailed below.[2]

### A.    Numerosity.

Rule 23(a)(1) requires Plaintiffs to show that the number of persons in the proposed class is so numerous that joinder of all class members would be

---

[2] It is also worth noting that, while not required for certification purposes in the Eleventh Circuit, *see Cherry v. Dometic Corp.*, 986 F.3d 1296, 1304 (11th Cir. 2021), the class is readily ascertainable.  In fact, the class members have already been identified.

impracticable. Here, there are approximately fifty (50) members of the proposed Settlement Class. Thus, the numerosity standard is satisfied. *See Williams v. Wells Fargo Bank, N.A.,* 280 F.R.D. 665, 671-72 (S.D. Fla. 2012) ("a class size of more than forty is adequate").

## B. **Commonality.**

Like the numerosity requirement, the commonality requirement of Rule 23(a)(2) is also a "low hurdle" to satisfy. *Williams v. Mohawk Indus, Inc.*, 568 F.3d 1350, 1356 (11th Cir. 2009). "Under the Rule 23(a)(2) commonality requirement, a class action must involve issues that are susceptible to class-wide proof." *Murray v. Auslander*, 244 F. 3d 807, 811 (11th Cir. 2011). "The burden to meet the commonality requirement of Rule 23(a) is relatively light." *Napoles-Arcila v. Pero Family Farms, LLC,* No. 08-80779-CIV, 2009 WL 1585970, at *6 (S.D. Fla. June 4, 2009). Courts in this circuit have held that the commonality threshold is met when a defendant has "engaged in a standardized course of conduct that affects all class members." *In re Terazoin Hydrochloride*, 220 F.R.D. 672, 686-87 (S.D. Fla. 2004*)*. Such is the case here.

Here, there are common issues regarding: (1) whether Defendant violated COBRA's notice requirements, including as to timing; and, (2) whether and to what extent statutory penalties are appropriate. These issues will be resolved through proof common to every Class Member. *Pottinger v. City of Miami*, 720 F. Supp. 955, 958 (S.D. Fla. 1989) (holding that although there must be at least one common issue of law or fact, "[i]t is not necessary, however, that the legal claims be

identical.").

Over the years numerous COBRA class actions have been certified. [3]The same outcome is warranted here. For these reasons, commonality is satisfied.

## C. __Typicality__.

Typicality is satisfied because all of the claims stem from Defendant's failure to provide a timely COBRA notice. This is a common course of conduct based upon the same legal theory and, thus, it satisfies typicality.

Typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Rosario-Guerro*, 265 F.R.D. at 627 (*citing Busby v. JRHBW Realty, Inc.*, 513 F. 3d 1314, 1322 (11th Cir. 2008). Factual variations "will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of other members of the class." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). Nor will variations in the amount of damages vitiate typicality. *Id.*

Here, Plaintiffs are typical of the Settlement Class that they seek to represent, as they did not receive timely COBRA notices from Defendant. Thus, the legal theory underlying the claims of the putative class members is identical to the

---

[3] See *Vazquez v. Marriott Int'l, Inc.,* No. 8:17-cv-000116, 2018 WL 3860217, at *2 (M.D. Fla. Aug. 7, 2018) (certifying class under Rule 23 as a result of deficient COBRA notice), *Hicks v. Lockheed Martin Corp.,* 8:19-cv-00261-JSM-TGW (M.D. Fla. Dec. 11, 2019)(Doc. 41)(certifying class of 54,000 individuals in deficient COBRA class action under Rule 23 for settlement purposes), *Carnegie v. FirstFleet, Inc.,* (M.D. Fla. June 21, 2019)(Doc. 63)(certifying class of 2,000+ individuals in deficient COBRA class action under Rule 23 for settlement purposes), and *Valdivieso v. Cushman & Wakefield, Inc.* 8:17-cv-00118-SDM-JSS (M.D. Fla. Dec. 9, 2018) (same).

Named Plaintiffs' claims and the claims at issue stem from the same conduct. Accordingly, Rule 23(a)(3) is also satisfied. *See, e.g., Pierce*, 2006 WL 6667384, at *4 (typicality met where "[a]ll of the class claims stem from Defendants' alleged failure to provide COBRA notices pursuant to the dictates of 29 U.S.C. § 1166, a common course of conduct, and are based upon the same legal theory.")

## D.   **Adequacy**.

The requirement of adequate representation addresses two issues: (1) whether Plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation; and (2) whether the named plaintiff has interests antagonistic to those of the rest of the class. *Williams,* 280 F.R.D. at 673. Here, Plaintiffs' counsel has extensive experience litigating other class action cases. *See generally* Declaration of Donna V. Smith.

Likewise, as to the Named Plaintiffs, "[t]here is nothing to indicate that [Plaintiffs'] interests are in conflict with any members of the class." *Brand v. Nat'l Bank of Commerce,* 213 F.3d 636 (5th Cir. 2000). To the contrary, Plaintiffs "share[] common interests with the class members and seek[s] the same type of relief[.]" *In re Checking Account Overdraft Litig.,* 275 F.R.D. at *7. Accordingly, the adequacy requirement is also met as to both counsel and the Named Plaintiffs.

## IV.   **RULE 23(b)(3)**.

Once the requirements of Rule 23(a) have been met, Plaintiffs need only then satisfy one of the alternative requirements of Rule 23(b) for the proposed class to be certified. *Valley Drug Co.*, *supra*. Plaintiffs rely on Rule 23(b)(3)—asserting

that common questions of law or fact predominate and that the class action is superior to other methods of proceeding in the case.

## A.    **Predominance**.

Predominance is governed by an analysis of whether liability may be resolved on a class-wide basis.  "Under Rule 23(b)(3) it is not necessary that all questions of law or fact be common, but only that some questions are common and that they predominate over the individual questions . . . In essence, the Court must determine whether there are common liability issues which may be resolved efficiently on a class-wide basis."  *Battle*, 2013 U.S. Dist. LEXIS 29263, at *10-11 (*internal citations omitted*).

Here, common questions of law and fact predominate.  The class members' legal theories rest upon uniform federal law – ERISA section 29 U.S.C. § 1166, enforceable pursuant to § 1132.  The central issues revolve around the untimeliness of the COBRA notice mailed by Defendant, and whether Defendant should be required to pay statutory penalties for its actions. In other similar cases involving COBRA notices courts have found that common issues predominated. *See, e.g., Vazquez*, 2018 WL 3860217, at *2 (certifying class under Rule 23 as a result of deficient COBRA notice); *Slipchenko v. Brunel Energy, Inc.*, 2013 WL 4677918, at *13 (S.D. Tex. Aug. 30, 2013); *Pierce*, 2006 WL 6667384, at *5.  The same outcome is warranted here.  To be sure, the common questions identified above predominate over any individualized issues.  The resolution of whether the COBRA Notice was timely sent does not break into individualized inquiries; rather, it is an objective

determination and central to the resolution of any claims of any purported class members.  Predominance under Rule 23(b)(3) is satisfied.

**B.**    **Superiority**.

Finally, the superiority requirement is also met. Resolving Settlement Class members' claims together in a class action is vastly superior to leaving each of them to fend for themselves. Many Settlement Class Members are likely not aware that their rights may have been violated and are, therefore, unlikely to prosecute individual claims. *See Ramirez v. Palisades Collection LLC,* 250 F.R.D. 366, 374 (N.D. Ill. 2008). Moreover, given the relatively small size of the claims at stake (involving discretionary statutory penalties), it is unlikely that class members would have sufficient incentive to bring their claims on an individual basis. Moreover, even if Settlement Class members were able to individually prosecute their claims, "[s]eparate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts." *Kennedy v. Tallant,* 710 F.2d 711, 718 (11th Cir. 1983). Thus, a class action is superior to other available methods for fairly and efficiently adjudicating this dispute.

## V.    RULE 23(e).

This settlement satisfies Rule 23(a) and Rule 23(b)(3) for certification purposes. This Court should also approve this settlement because it satisfies the requirements for preliminary certification under Rule 23(e).  The settlement is fair, reasonable, and adequate.

**A.**    **Settlement Terms and Information**.

### 1.  **The Settlement Class.**

The Settlement Agreement defines the Settlement Class as follows:

"All participants and beneficiaries in the Defendant's Health Plan at Defendant's Melbourne, Florida facility who were not sent a timely COBRA notice by Defendant during the applicable statute of limitations period as a result of a qualifying event, as determined by Defendant."

### 2.  **Benefits to the Settlement Class and Named Plaintiffs.**

The Settlement Agreement, if approved, will resolve all claims of Plaintiffs and all Settlement Class Members in exchange for the Defendant's agreement to pay $137,750.00, which includes $1,305.00 to each Settlement Class Member.  The Parties separately negotiated the Settlement Fund (i.e., the payment made to each Settlement Class Member) and the class definition from the attorneys' fees and costs.

As noted, the Settlement Class Members will not be required to take any action to receive a portion of the settlement funds, making it a "claims paid" settlement.  Each Settlement Class Member that does not submit a timely opt out will receive a gross payment of $1,305.00.  If any Settlement Class Payments are not cashed within sixty (60) days of these distributions, said payments shall be submitted to the Florida Department of Financial Services, Division of Unclaimed Property.

The Settlement Agreement also provides for Plaintiffs' Counsel's fees and costs as well as provisions for payments to the Settlement Administrator. Plaintiffs' Counsel is authorized to file an unopposed petition for $65,000.00 in

attorneys' fees, and up to $2,500.00 in out-of-pocket litigation costs. Neither Settlement approval nor the size of the Settlement Fund are contingent upon the full amount of any requested fees or class representative service award being approved.

### 3. <u>Administration of Notice</u>.

The Parties agreed to utilize a private, third-party vendor, American Legal Claim Services, LLC, to administer notice in this case. Defendant agrees to pay the Settlement Administrator's costs of up to $5,000.00. Any Settlement Administration Costs exceeding $5,000.00 shall be paid by Plaintiffs. The Parties seek court approval of the agreed upon Notices of Settlement to the Class Members, attached hereto as **Exhibit D**. Within ten (10) business days after receipt of the Court-approved Notice of Settlement from the Parties, the Settlement Administrator will mail said notice to all Settlement Class Members via first-class U.S. Mail.

### 4. <u>Attorneys' Fees and Expenses</u>.

Pursuant to the Settlement Agreement, Plaintiffs' Counsel is authorized to file an unopposed petition for attorneys' fees of $65,000.00 and up to $2,500.00 in litigation costs. Plaintiffs' Counsel will file a separate motion seeking approval for fees and costs. Defendant does not oppose the amount of fees and costs as contemplated herein and in the Settlement Agreement.

### 5. <u>Class Action Fairness Act Notice</u>.

The Settlement Administrator will cause notice of the proposed Settlement

to be served upon the appropriate Federal and State officials, as required by the Class Action Fairness Act of 2005 ("CAFA").

**B.    The Settlement Meets the Requirements of Rule 23(e) for Approval.**

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any settlement agreement that will bind absent class members. This involves a two-step process. *Holman v. Student Loan Xpress. Inc.*, No. 8:08-CV-305-T23MAP, 2009 WL 4015573, at *4 (M.D. Fla. Nov. 19, 2009). "In the first step of the process, a court should make a preliminary evaluation of the fairness of the settlement before directing that notice be given to the settlement class." *Smith*, 2010 WL 2401149, at *2. Courts at this stage typically look at whether: (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate, and (4) the proposal treats class members equitably relative to each other.

**1.    The Class Representatives and Plaintiffs' Counsel Have Adequately Represented the Class.**

There is no question that Named Plaintiffs Heather Roll, Colleen Ronan, David K. Ronan and Plaintiffs' Counsel have adequately represented the class. This first Rule 23(e)(2) requirement encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action. *Busby*, 513 F.3d at 1323. Here, the adequacy-of-representation requirement has been met.

19

The Named Plaintiffs are adequate given that their interests are equivalent to those of the Settlement Class.  Named Plaintiffs have been actively involved in this case from its inception and participated in written discovery.  There is also no obvious conflict of interest between the Named Plaintiffs and the Settlement Class.  The Named Plaintiffs have the same interest as the Settlement Class Members in prosecuting their claims.  Named Plaintiffs, along with counsel, secured a significant settlement payment of $1,305.00 to each Settlement Class Member from a highly sophisticated Defendant in favor of the class members they seek to represent.

Where Plaintiffs' Counsel has extensive class action experience and no evidence of collusion or bad faith exists, the judgment of the litigants and their counsel concerning the adequacy of the settlement is entitled to deference. *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 532-33 (E.D. Ky. 2010) *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011) ("in deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference"). Thus, the proposed Settlement satisfies Rule 23(e)(2)'s first component, adequacy.

### 2.  **The Settlement is the Product of Arm's Length Negotiations Between Experienced Counsel.**

The next Rule 23(e)(2) factor is also satisfied because the proposed Settlement is the product of arm's length negotiations following significant

20

discovery.  This also weighs in favor of approval.  *See Gevaerts v.  TD Bank, N.A.,* No. 11:14-CV-20744-RLR, 2015 WL 12533121, at *7 (S.D. Fla. Aug. 4, 2015).

The proposed Settlement, and the record in this case, show that the Settlement Agreement was the product of extensive and detailed arm's-length, and at times contentious, negotiations between the Parties and their counsel.  The Parties ultimately reached the tentative class settlement at issue in this Motion through an approximately 12-hour mediation on October 9, 2020. As stated above, all counsel involved in the negotiations are experienced in handling class action litigation and complex litigation, and are clearly capable of assessing the strengths and weaknesses of their respective positions.

### 3.    The Settlement Provides Sufficient Relief to Class Members.

As detailed above, the Settlement will provide sufficient relief to Settlement Class Members, satisfying the third Rule 23(e)(2) factor.  The Settlement requires Defendant to pay each Settlement Class Member $1,305.00.  This represents a statutory penalty of approximately $40.78 per day that the COBRA election notice was late.  This falls well within the range of reasonableness for settlement purposes.  *See, e.g., Gilbert v. SunTrust Banks, Inc.*, Case No. 9:15-80415-Civ-Brannon (S.D. Fla. July 29, 2016) (court approved settlement COBRA notice case in which each class member's gross recovery was $32 and net of $11); *Hicks v. Lockheed Martin Corp, Inc.*, 8:19-cv-00261-JSM-TGW (M.D. Fla. Sept. 5, 2018) (court approved settlement COBRA notice case in which each class member's gross

recovery was $24 and net of $13).

The Settlement's monetary relief is particularly reasonable in this case because it was possible that Settlement Class Members could have recovered no monetary damages even if they were successful on the merits. Moreover, under the Settlement, all Settlement Class Members will receive the aforementioned settlement payment, as they do not need to file a claim form in order to receive a settlement payment.

### 4. **The Settlement Treats Class Members Equitably Relative to Each Other.**

The last Rule 23(e)(2) factor is satisfied because the proposed Settlement treats class members equitably. In fact, they are treated identically. As set forth above, with the Settlement Class comprised 50 participants, each Settlement Class Member will receive an identical Settlement Class Payment of $1,305.00. This a "claims paid" Settlement. Settlement Class Members do not have to submit claim forms to receive a share of the settlement proceeds. Rather, all Settlement Class Members will simply receive checks after the Settlement Effective Date. Additionally, no funds will revert to Defendant. This also weighs in favor of approving this settlement. Instead of the funds reverting to Defendant, if Settlement checks are not cashed, the unclaimed Settlement Class Payments shall be submitted to the Florida Department of Financial Services, Division of Unclaimed Property.

If Plaintiffs had chosen to continue to litigate their claims, a successful

outcome was far from guaranteed.  As discussed below, Plaintiffs faced significant risks with respect to liability and damages.  First, Plaintiffs face significant hurdles in achieving class certification.  *See Bryant v. Wal-Mart Stores, Inc.,* No. 16-24818-CIV, 2020 WL 4333452, at *12 (S.D. Fla. July 15, 2020).  Second, with respect to liability, important issues remained to be decided upon the evidence presented.  Third, with respect to damages, the pertinent regulations provide for a maximum statutory penalty of $110 per day, but no minimum penalty.  *See* 29 C.F.R. § 2575.502c-1.  Whether or not to award statutory penalties is left completely within the discretion of the court.  *See Scott,* 295 F.3d at 1232.  In other words, even if Plaintiffs were able to prove that Defendant violated ERISA and/or COBRA, Plaintiffs and Settlement Class Members may have recovered only nominal damages, or even nothing at all.  Fourth, even if Plaintiffs overcame Defendant's opposition to class certification, summary judgment motion, and won at trial, and convinced the court to award statutory penalties, Defendant likely would have appealed in final adverse judgment, meaning Plaintiffs would also need to survive appellate proceedings.  Thus, to avoid the foregoing risks, it was reasonable for Plaintiffs to settle the case at this juncture, in order to assure class-wide monetary and prospective relief for Settlement Class Members.  *See, Bennett v. Behring Corp.,* 76 F.R.D. 343, 349-50 (S.D. Fla. 1982) (stating that it would have been "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers [...] to the vagaries of a trial"), *aff'd,* 737 F.2d 982 (11th Cir. 1984).

### 5. <u>The Settlement Will Avoid a Complex, Expensive, and Prolonged Legal Battle Between the Parties.</u>

Aside from the risks of litigation, continuing the litigation would have resulted in complex, costly, and lengthy proceedings before this Court, and any appeals thereafter, which would have significantly delayed relief to Settlement Class Members (at best), and might have resulted in no relief at all. Indeed, complex litigation such as this "can occupy a Court's docket for years on end, depleting the resources of the parties and taxpayers while rendering meaningful relief increasingly elusive." *In re U.S. Oil & Gas Litig.,* 967 F.2d at 493. By settling now, Plaintiffs saved precious time and costs, and avoided the risks associated with further litigation, trial, and an inevitable appeal.

## VI.    <u>THE COURT SHOULD APPROVE THE PARTIES' NOTICE</u>.

In addition to reviewing the substance of the Parties' Settlement Agreement, the Court must ensure that notice is sent in a reasonable manner to all Settlement Class Members who would be bound by the proposed settlement. Fed. R. Civ. P. 23(e)(1). The "best notice" practicable under the circumstances includes individual notice to all potential class members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). Each Settlement Class Member will be sent a Notice of the proposed settlement via U.S. First-Class Mail, informing them of the terms of the Settlement and their right to object, which complies with each of the requirements of Rule 23(c)(2)(B). Accordingly, this Court should approve the Notice of Settlement.

## VII.  <u>CONCLUSION</u>.

For the foregoing reasons, the Parties respectfully request that this Court

enter the attached proposed Order.

Respectfully submitted,

Dated: August 6, 2021.

**WENZEL FENTON CABASSA, P.A.**     **SMITH, GAMBRELL & RUSSELL, LLP**

By: /s/ Donna V. Smith                           By: /s/ Yash B. Dave
Donna V. Smith                                          Yash B. Dave, Trial Counsel
Florida Bar No: 661201                             Florida Bar No. 0068573
1110 North Florida Avenue, Suite 300     Email: ydave@sgrlaw.com
Tampa, Florida 33602                              Scott S. Gallagher, Florida Bar No. 371970
Main Phone: (813) 224-0431                   Email: ssgallagher@sgrlaw.com
Direct Phone: (813) 386-0995                 Ian M. Jones, Florida Bar No. 0121557
Fax: (813) 229-8712                                 Email: ijones@sgrlaw.com
Email: dsmith@wfclaw.com                     50 N. Laura Street, Suite 2600
Email: rcooke@wfclaw.com                     Jacksonville, Florida 32202
**Attorneys for Plaintiffs**                        Telephone: (904) 598-6100
                                                               Facsimile: (904) 598-6215
                                                               **Attorneys for Defendant**